IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FRED E. RIZK, RIZK INTERESTS, Ltd., § <br> EDWARD G. RIZK, SYLVIA R. RIZK, § <br> as Trustee of the RRR TRUST, § <br> KENNETH A. BARFIELD, and § <br> AUSTIN PROPERTIES, L.L.C., § <br> § <br> *Plaintiffs,* § <br> § <br> v. § <br> § <br> MYRM HOLDINGS, L.L.C., § <br> MRYM HOLDINGS, L.L.C., § <br> MRYM HOLDINGS, Ltd. Co., § <br> MRYM GROUP, Ltd., § <br> CHRISTOPHER L. BLACKWELL, § <br> RANDALL HIBSHMAN, and § <br> KANTI BAHL, § <br> § <br> *Defendants.* § | | CIVIL ACTION NO. 11-180 <br> JURY DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Fred E. Rizk, Rizk Interests, Ltd., Edward G. Rizk, Sylvia R. Rizk, as Trustee of the RRR Trust, Kenneth A. Barfield, and Austin Properties, L.L.C. (collectively "Plaintiffs") assert the following claims and causes of action against Defendants MYRM Holdings, L.L.C., MRYM Holdings, L.L.C., MRYM Holdings, Ltd. Co., MRYM Group, Ltd., Christopher L. Blackwell, Randall Hibshman, and Kanti Bahl (collectively "Defendants").

I. PARTIES

1. Plaintiff Fred E. Rizk is an individual residing in Harris County, Texas.

2. Plaintiff Rizk Interests, Ltd. is a Texas limited partnership.

3. Plaintiff Edward G. Rizk is an individual residing in Harris County, Texas.

1

4.      Plaintiff Sylvia R. Rizk, as Trustee of the RRR Trust, is an individual residing in Travis County, Texas.

5.      Plaintiffs Fred E. Rizk, Rizk Interests, Ltd., Edward G. Rizk, and Sylvia R. Rizk, as Trustee of the RRR Trust, are hereinafter collectively referred to as the "Rizk Interests."

6.      Plaintiff Kenneth A. Barfield ("Barfield") is an individual residing in Travis County, Texas.

7.      Plaintiff Austin Properties, L.L.C. ("Austin Properties") is a Nevada limited liability company with its principal place of business in San Antonio, Texas.

8.      Defendant MYRM Holdings, L.L.C. ("MYRM") purports to be a British entity maintaining a principal office at Shephard's Meadow, Eaton Bishop, Hereford, HR2 9UA, United Kingdom.  MYRM conducts business throughout the State of Texas and may be served through its "Director and Trader," Christopher L. Blackwell, 1229 E. Mescalero Road, Roswell, New Mexico 88201, or wherever he may be found.  Alternatively and/or additionally, service of process on MYRM may be made by and through the *Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matter, done at The Hague, November 16, 1965. 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, reprinted in Vol. VIII Martindale-Hubbell Law Directory, Part VII at pp 1-8 (1990).*  Pursuant to the foregoing Hague Convention, service documents are to be forwarded to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs, London, SW1A2AL, for further service upon Defendant MYRM at Shephard's Meadow, Eaton Bishop, Hereford, HR2 9UA, United Kingdom.

9.      Defendant MRYM Holdings, L.L.C. is a Wyoming limited liability company conducting business throughout the State of Texas.  MRYM Holdings, L.L.C. may be served

with process through its registered agent, Hathaway & Kunz P.C., 2515 Warren Avenue, Suite 500, Cheyenne, Wyoming 82001.  Additionally and/or alternatively, MRYM Holdings, L.L.C. is a Nevada limited liability company conducting business throughout the State of Texas, and may be served through its registered agent, Incsmart.Biz, Inc., 4421 Edward Avenue, Las Vegas, Nevada 89108.

10. Defendant MRYM Holdings, Ltd. Co. is an Oklahoma entity maintaining a principal office at 14252 Culver Drive, Suite A-487, Irvine, California 92604.  MRYM Holdings, Ltd. Co. conducts business throughout the State of Texas and may be served through its registered agent, William C. Bowley, 3601 N. Classen, Suite 105, Oklahoma City, Oklahoma 73118.

11. Defendant MRYM Group, Ltd. is a Chinese entity maintaining a principal office at RM 1102, 11/F Beautiful Group Tower, 77 Connaught Road, Central, Hong Kong SAR, People's Republic of China.  MRYM Group, Ltd. conducts business throughout the State of Texas and service of process on MRYM Group, Ltd. may be made by and through the *Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matter, done at The Hague, November 16, 1965.  20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, reprinted in Vol. VIII Martindale-Hubbell Law Directory, Part VII at pp 1-8 (1990).* Pursuant to the foregoing Hague Convention, service documents are to be forwarded to the Bureau of International Judicial Assistance, Ministry of Justice of the People's Republic of China, No. 26, Nanheyan, Chaowai, Chaoyang District, Beijing, 100020, People's Republic of China, for further service upon Defendant MRYM Group, Ltd. at RM 1102, 11/F Beautiful Group Tower, 77 Connaught Road, Central, Hong Kong SAR, People's Republic of China.

12. Defendants MRYM Holdings, L.L.C., MRYM Holdings, Ltd. Co., and MRYM Holdings Group, Ltd. are hereinafter collectively referred to as the "MRYM Entities."

13. Defendant Christopher L. Blackwell ("Blackwell") is an individual residing in New Mexico and may be served at his last known residence, 1229 E. Mescalero Road, Roswell, New Mexico 88201, or wherever he may be found.

14. Defendant Randall Hibshman ("Hibshman") is an individual residing in Oklahoma and may be served at his last known residence, 4801 Tanglewood Drive, Edmond, Oklahoma 73013 or wherever he may be found.

15. Defendant Kanti Bahl is an individual residing in Ontario, Canada whose last known residence is 1446 Silky Rose Court, Streetsville, Mississauga, Ontario, Canada. Service of process on Kanti Bahl may be made by and through the *Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matter, done at The Hague, November 16, 1965. 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, reprinted in Vol. VIII Martindale-Hubbell Law Directory, Part VII at pp 1-8 (1990).* Pursuant to the foregoing Hague Convention, service documents are to be forwarded to the Ministry of the Attorney General for Ontario Reciprocity Office: Civil Law Division, 18 King Street East, Toronto, Ontario, Canada M5C 1C5, for further service upon Defendant Kanti Bahl at 1446 Silky Rose Court, Streetsville, Mississauga, Ontario, Canada or wherever he may be found.

## II. JURISDICTION AND VENUE

16. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441 because the underlying claims at issue involve rights and liabilities governed by federal law. Specifically, the claims asserted herein arise, in part, under Section 22(a) of the Securities

4

Act of 1933 (15 U.S.C. § 77v), Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78) and Section 214 of the Investment Advisors Act of 1940 (15 U.S.C. § 80(b)). Defendants have, directly or indirectly, made use of the mails and the means and instrumentalities of interstate commerce in connection with the acts, transactions, practices, and courses of business described herein.

17.     Venue is proper in the Western District pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 77v because certain acts, transactions, practices, and courses of business constituting the violations alleged herein occurred in the Western District of Texas, specifically Travis County, Texas, and certain Plaintiffs are located in the Western District of Texas.

### III.  BACKGROUND FACTS

18.     On October 19, 2009, Rizk Interests, Barfield, and Austin Properties entered into a joint venture agreement for the purpose of purchasing one or more collateralized mortgage obligations ("CMO"). Pursuant to that joint venture agreement, Plaintiffs purchased a CMO to be placed in a trading program with certain anticipated returns to Plaintiffs. Specifically, on or about October 30, 2009, Plaintiffs, by and through their joint venture agreement, invested $794,554.80 to purchase 600 million shares of a certain Morgan Stanley CMO with cusip number 617453AA3 and having the description "Morgan Stanley CAP I IO REMIC SER 2006-IQ11 CL X MONTHLY 14 DAY DELAY VAR CPN 0.024% DUE 10/15/42 DTD 06/01/06 FC 07/15/06" (the "Morgan Stanley CMO").

19.     After purchasing the Morgan Stanley CMO, Plaintiffs entered into a Limited Bonus Partnership Agreement (the "Agreement") with Defendant MYRM on May 12, 2010. The purpose of the Agreement was for Blackwell and/or MYRM and/or the MRYM Entities to

5

manage the Morgan Stanley CMO. Specifically, Defendants would use the Morgan Stanley CMO as collateral for lines of credit or letters of credit, which Defendants would then use to trade fixed income securities.

20. While negotiating the Agreement, Defendant Blackwell made various false representations to Plaintiffs. Specifically, Blackwell stated that he had experience working for the Bank of Madrid and Goldman Sachs, neither of which, upon information and belief, are true. Blackwell further misrepresented his academic pedigree and affiliation with various individuals and banking entities. Blackwell represented that, because of his experience, education, and various established relationships, he would yield substantial guaranteed profits to Plaintiffs. Blackwell stated that he set up his own private clients to trade Plaintiffs' asset and, therefore, Blackwell could guarantee a certain return rate to Plaintiffs. Based on Blackwell's material misrepresentations, Plaintiffs and entered into the Agreement.

21. The Agreement names "MYRM Holdings, L.L.C." as the "First Party" to the Agreement and Blackwell signed for "MYRM Holdings, L.L.C." Exhibit B to the Agreement, however, states that Plaintiffs' funds should be transferred to an account held by "MRYM Holdings, Ltd." It now appears Blackwell did not have authority to act on behalf of MYRM, MRYM Holdings, L.L.C. or MRYM Holdings, Ltd. Co. Rather, Blackwell now claims he only had authority to act on behalf of Defendant MRYM Group, Ltd., and expressly disavows ever having any interest, affiliation, or power to act on behalf of any entity named in the Agreement.

22. Based on the Agreement, Plaintiffs directed their Morgan Stanley CMO be transferred to MRYM Holdings, Ltd. on or about May 12, 2010. Defendants did not use or manage the Morgan Stanley CMO pursuant to the Agreement. Rather, upon information and

belief, Defendants used Plaintiffs' Morgan Stanley CMO for their own improper purposes, including possibly to provide payments to other investors as part of a larger Ponzi scheme, as alleged by the Securities and Exchange Commission in proceedings against Blackwell.

23. To date, Plaintiffs have received no payments as specified by the Agreement, nor have Plaintiffs been able to locate their Morgan Stanley CMO. Since Defendants obtained the Morgan Stanley CMO, they allegedly transferred it to other unknown entities. Despite numerous inquiries by Plaintiffs, no person or entity has located Plaintiffs' Morgan Stanley CMO. Despite numerous promises by Defendants to return the Morgan Stanley CMO to Plaintiffs, or to pay to Plaintiffs the value of the Morgan Stanley CMO, the Defendants have failed to return the CMO or pay Plaintiffs any money. In sum, it now appears to Plaintiffs the Morgan Stanley CMO has been stolen.

24. Upon information and belief, Defendants MYRM and the MRYM Entities are related entities. Defendants Blackwell, Hibshman, and Bahl are officers, directors, principals, and/or otherwise affiliated with, MYRM and the MRYM Entities. Upon information and belief as a result of Plaintiffs' investigations, some of the Defendants' entities may have never existed. Rather, they were part of Defendants' scheme. Defendants acted together, by the use of the various Defendant entities to make the various misrepresentations and perpetrate the fraud alleged herein.

25. On February 7, 2011, the Securities and Exchange Commission filed a Complaint in the United States District Court for the Northern District of Texas, Dallas Division, bearing cause number 3:11-cv-00234-L, styled *Securities and Exchange Commission v. Christopher Love Blackwell, AV Bar Reg, Inc., and Millers A Game, L.L.C.*, alleging certain causes of action

and seeking injunctive relief against Blackwell. The entities named in that complaint were allegedly used by Blackwell to perpetrate similar frauds and further a Ponzi scheme. The factual allegations are nearly identical to those described herein, as Blackwell allegedly made the same misrepresentations to apparent victims other than Plaintiffs. Further, the SEC seeks injunctive relief in a manner similar to the relief described herein and in Plaintiffs' Application for Temporary Restraining Order and Temporary Injunction. The Complaint filed by the SEC demonstrates the ongoing and pervasive nature of Defendants' fraudulent schemes, further supporting Plaintiffs' request for the relief described herein and in Plaintiffs' Application for Temporary Restraining Order and Temporary Injunction.

26. In another action filed in the 141st Judicial District Court, Tarrant County, Texas, styled *The Hanover Packard Group, L.L.C. v. AV Bar Reg., Inc.*, the Hanover Packard Group, L.L.C. ("HPG") sought, and obtained, a judgment against Blackwell's entity, AV Bar Reg., Inc. ("AV") for over $23 million. In that case, HPG alleged that Blackwell, by and through AV, agreed to loan HPG $18.75 million secured by 2 bonds owned by HPG. The two bonds used as collateral had a total face value of over $85 million. AV and Blackwell failed to loan HPG the money, resulting in HPG's lawsuit. HPG's lawsuit sought to prevent the dischargeability of AV and Blackwell's debt arising from the loan agreement. HPG successfully obtained a judgment and abstracted that judgment on December 4, 2008. The HPG lawsuit further demonstrates the pervasive and ongoing nature of Defendants' fraudulent scheme.

### IV.  CAUSES OF ACTION

**A.    *Violations of Section 10(b) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5***

27. Plaintiffs repeat and re-allege each allegation set forth herein.

8

28. Section 10(b) of the Securities Exchange Act of 1934 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange…To use or employ, in connection with the purchase or sale of any security…, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

29. SEC Rule 10b-5 ("Rule 10b-5"), promulgated pursuant to Section 10(b) of the Securities Exchange Act of 1934, as amended, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

30. Defendants have, by engaging in the conduct described herein, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities.

9

31. As part of and in furtherance of their scheme, Defendants, directly and indirectly, prepared, disseminated, or used contracts, promotional materials, investor and other correspondence, and oral presentations which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

32. Defendants made the referenced misrepresentations and omissions intentionally, knowingly, or with severe reckless disregard for the truth.

33. By reason of the foregoing, Defendants have directly or indirectly violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. §§ 240.10b-5) and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act and Rule 10b-5.

34. Defendants' violations of the Securities Exchange Act as described herein have been the proximate cause of damages to Plaintiffs.

**B.**     *Violations of the Securities Act of 1933*

35. Plaintiffs repeat and re-allege each allegation set forth herein.

36. Defendants acts and omissions, as set forth herein, violated 15 U.S.C. § 77l(a)(2) in that Defendants offered and sold securities by "the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact and omitted to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made not misleading." 15 U.S.C. § 77l(a)(2). Defendants violated 15 U.S.C. § 77q(a)(1)-(3) in that they sold or offered for sale securities by the use of

10

means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly (1) to employ any device, scheme, or artifice to defraud; (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon Plaintiffs.

37. As part of and in furtherance of their scheme, Defendants, directly and indirectly, prepared, disseminated, or used contracts, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38. Defendants made the above-referenced misrepresentations and omissions intentionally, knowingly, or with severe reckless disregard for the truth. Defendants were also negligent in their actions regarding the representations and omissions alleged herein.

39. For these reasons, Defendants violated, and unless enjoined, will continue to violate the Securities Act of 1933 as stated herein.

40. Defendants' violations of 15 U.S.C. §§ 77l and 77q as described herein have been the proximate cause of damages to Plaintiffs.

C. *Violations of Sections 206(1) and 206(2) of the Investment Advisors Act*

41. Plaintiffs repeat and re-allege each allegation set forth herein.

42. Defendants, as investment advisors, used the mails and means or instrumentalities of interstate commerce, directly and indirectly to (1) employ devices, schemes or artifices to

defraud clients or prospective clients, or (2) engage in transactions, practices, and courses of business which operated as a fraud or deceit upon clients and prospective clients.

43. For these reasons, Defendants have violated and, unless enjoined, will continue to violate Sections 206(1) and 206(2) of the Investment Advisors Act (15 U.S.C. §§ 80b-6(1), (2)).

44. Defendants' violations of the Investment Advisors Act as described herein have been the proximate cause of damages to Plaintiffs.

**D.**     *Violations of Texas Securities Act section 581.33A(1)*

45. Plaintiffs repeat and reallege each allegation set forth herein.

46. Defendants are liable to Plaintiffs pursuant to TEX. REV. CIV. STAT. ANN. art. 581, § 33A(1) (Vernon 2010) by reason of their sale of securities while not being registered as a dealer and/or agent and through persons who were not registered as a dealer and/or agent with the Texas State Securities Board in violation of the Texas Securities Act.

47. For these reasons, Defendants have violated and, unless enjoined, will continue to violate the Texas Securities Act as described herein.

48. Defendants' violations of the Investment Advisors Act as described herein have been the proximate cause of damages to Plaintiffs. Further, based on these violations, Plaintiffs hereby sue for rescission pursuant to TEX. REV. CIV. STAT. ANN. art. 581, § 33.

**E.**     *Violations of Texas Securities Act section 581.33(A)2*

49. Plaintiffs repeat and re-allege each allegation set forth herein.

50. Defendants are liable to Plaintiffs pursuant to TEX. REV. CIV. STAT. ANN. art. 581, § 33A(2) by reason of their fraudulent statements, misrepresentations, and omissions in the sale of securities to Plaintiffs, as set forth in detail herein.

12

51.     Defendants' violations of the Texas Securities Act as described herein have been the proximate cause of damages to Plaintiffs. Further, based on these violations, Plaintiffs hereby sue for rescission pursuant to TEX. REV. CIV. STAT. ANN. art. 581, § 33A(2).

**F.     *Violations of Texas Securities Act section 581.33-1***

52.     Plaintiffs repeat and re-allege each allegation set forth herein.

53.     Defendants are liable to Plaintiffs pursuant to TEX. REV. CIV. STAT. ANN. art. 581, § 33-1 (Vernon 2010) because Defendants committed fraud or engaged in a fraudulent practice in rendering services as investment advisors as described herein.

54.     Defendants' violations of TEX. REV. CIV. STAT. ANN. art. 581, § 33-1 as described herein proximately caused damages to Plaintiffs. Plaintiffs hereby seek all damages available under TEX. REV. CIV. STAT. ANN. art. 581, § 33-1(B).

**G.     *Fraud***

55.     Plaintiffs repeat and re-allege each allegation set forth herein.

56.     Defendants had a duty to refrain from making material misrepresentations described herein. In addition, Defendants had a duty to disclose all relevant information regarding the Agreement and Plaintiffs' investment.

57.     Defendants' affirmative misrepresentations and failures to disclose were intended to induce Plaintiffs to enter into the Agreement and transfer the Morgan Stanley CMO to Defendants. Plaintiffs relied on Defendants' material misrepresentations and omissions when Plaintiffs entered into the Agreement and transferred the Morgan Stanley CMO to Defendants.

58.     Defendants' conduct as described herein constitutes common law fraud. Defendants' fraud has been the proximate cause of actual damages to Plaintiffs.

**H.**     *<u>Breach of Fiduciary Duty</u>*

59.     Plaintiffs repeat and re-allege each allegation set forth herein.

60.     Defendants owed fiduciary duties to Plaintiffs as Plaintiffs' investment advisors, partners, and securities brokers.  As Plaintiffs' trusted advisors, partners, and holders of Plaintiffs' assets, Defendants were obligated to act with loyalty and in good faith in Plaintiffs' best interest.

61.     Defendants' conduct, as described herein, constitutes numerous breaches of their fiduciary duties to Plaintiffs.  Defendants violated their duty of loyalty and failed to act in good faith by putting their personal interests before Plaintiffs' interests.  Defendants' breaches of fiduciary duty have been the proximate cause of actual damages to Plaintiffs.

**I.**     *<u>Negligent Misrepresentation</u>*

62.     Plaintiffs repeat and re-allege each allegation set forth herein.

63.     As described herein, Defendants made various false representations to Plaintiffs in the course of negotiating and executing the Agreement, in which Defendants had an interest.

64.     As described herein, Defendants provided false information for the guidance of others, namely Plaintiffs, with the intent of persuading Plaintiffs to enter into the Agreement and transfer Plaintiffs' Morgan Stanley CMO to Defendants.

65.     Defendants failed to exercise reasonable care or competence in obtaining or communicating such information.

66.     Plaintiffs justifiably relied on Defendants' misrepresentations.

67.     Defendants' negligent misrepresentations have been the proximate cause of actual damages to Plaintiffs.

14

**J.** *<u>Breach of Contract</u>*

68. Plaintiffs repeat and reallege each allegation set forth herein.

69. Plaintiffs and Defendants entered into the Agreement described herein, whereby Defendants would, *inter alia*, "have a contractual commitment of the utilization of [Plaintiffs'] asset, via a reliable banking source for delivery of "new issue" senior Bank Instruments and also has/will have secured by a contract with reliable who has/will obligate themselves to purchase the instruments or currencies that are the subject of this [Agreement]." Pursuant to the terms of the Agreement, Defendants were obligated to make certain profit payments to Plaintiffs in a certain format and manner. As described herein, Defendants failed to perform their duties and obligations pursuant to the Agreement.

70. Plaintiffs, as parties to the Agreement, are proper parties to sue for breach of contract.

71. Plaintiffs performed their contractual obligations under the Agreement.

72. Defendants' breaches of the Agreement as described herein, have been the proximate cause of actual damages to Plaintiffs.

**K.** *<u>Texas Theft Liability Act</u>*

73. Plaintiffs repeat and re-allege each allegation set forth herein.

74. Plaintiffs maintain a possessory right to the personal property (the Morgan Stanley CMO) that Defendants unlawfully appropriated, secured, or stole in violation of the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001-134.005 (Vernon 2005).

75. Defendants' conduct as described herein constitutes the theft of personal property under Texas Penal Code section 31.03.

76. Defendants' unlawful taking was made with the intent to deprive Plaintiffs of their property. Defendants' violation of the Texas Theft Liability Act has been the proximate cause of actual damages to Plaintiffs.

**L.**   *Aiding and Abetting Breaches of Fiduciary Duty*

77. Plaintiffs repeat and re-allege each allegation set forth herein.

78. Defendants were knowing participants in, and aided and abetted, the breaches of fiduciary duty committed by Blackwell and other Defendants. Accordingly, Defendants are jointly and severally liable for Plaintiffs damages proximately caused by Defendants' breaches of fiduciary duty.

**M.**   *Conversion*

79. Plaintiffs repeat and re-allege each allegation set forth herein.

80. Plaintiffs owned or possessed the personal property (Morgan Stanley CMO) made the subject of the Agreement.

81. Defendants wrongfully exercised dominion and/or control over Plaintiffs' property. Despite numerous demands, Defendants have refused to surrender and return Plaintiffs' property.

82. Defendants' conduct as described herein constitutes conversion. Defendants' conversion has been the proximate cause of actual damages to Plaintiffs.

**N.**   *Civil Conspiracy*

83. Plaintiffs repeat and re-allege each allegation set forth herein.

84. Defendants were a combination of two or more persons or entities whose objective was to accomplish an unlawful purpose or a lawful purpose by unlawful means.

85. Defendants had a meeting of the minds on the object or course of action described herein.

86. At least one Defendant committed an unlawful, overt act to further the Defendants' object or course of action.

87. Defendants' actions constitute conspiracy. Defendants' conspiracy has been the proximate cause of actual damages to Plaintiffs.

**O.** *Piercing the Corporate Veil*

88. Plaintiffs repeat and reallege each allegation set forth herein.

89. Based on the allegations set forth herein, the corporate form of the Defendant entities MYRM and the MRYM Entities should be disregarded.

90. Specifically, the corporate form of said Defendant entities should be disregarded because:

   a. the form was used to perpetuate a fraud;

   b. the entities were organized and operated as a mere tool or business conduit of another;

   c. the form was used to evade an existing legal obligation;

   d. the form was used to protect against the discovery of a crime or to justify a wrong;

   e. Defendants caused the entities to be used for the purpose of perpetuating an actual fraud; and

    f.    Defendants perpetrated an actual fraud on Plaintiffs primarily for the Defendants' direct personal benefit.

## VI. EXEMPLARY DAMAGES

91.    Defendants' violations of the Texas Theft Liability Act, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, fraud, conversion, and conspiracy were aggravated by the kind of willfulness, wantonness and malice for which the law allows the imposition of exemplary damages. Therefore, Plaintiffs seek and are entitled to recover exemplary damages from each Defendant in an amount to be determined by the jury.

## VII. CONSTRUCTIVE TRUST/DISGORGEMENT

92.    As a result of Defendants' violations of the Texas Theft Liability Act, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, fraud, conversion, and conspiracy, Plaintiffs are entitled to a constructive trust on the Morgan Stanley CMO made the subject of this lawsuit, as well as on all profits, monies, or economic benefits received or obtained by Defendants as a result of their wrongful conduct as described herein.

93.    Additionally or alternatively, Defendants should be required to disgorge all profits, monies, or economic benefits received or obtained through and as a result of their violations of the Texas Theft Liability Act, breaches of fiduciary duty, fraud, and/or conversion.

## VIII. ATTORNEYS' FEES

94.    Pursuant to sections 134.005(b) and 38.001 of the Texas Civil Practice & Remedies Code, Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs incurred in this case.

## IX. J<small>URY</small> D<small>EMAND</small>

95.     Plaintiffs demand a trial by jury, and have submitted the appropriate jury fee.

## X. P<small>RAYER</small>

96.     Plaintiffs respectfully request that they have judgment against Defendants, jointly and severally, and that Plaintiffs be awarded the following relief:

A. temporary and permanent relief as set forth herein and as set forth in Plaintiffs' Application for Temporary Restraining Order and Temporary Injunction filed contemporaneously herewith;

B. rescission of any transfer of the Morgan Stanley CMO;

C. all damages proved at trial;

D. all special damages, including lost profits, resulting from Defendants' wrongful actions;

E. exemplary damages in an amount to be determined by the jury;

F. imposition of a constructive trust and/or disgorgement as set forth herein;

G. prejudgment and post-judgment interest at the maximum amount allowed by law;

H. reasonable and necessary attorneys' fees;

I. costs of court; and

J. all other relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

LOOPER, REED & McGRAW, P.C.

By: _____/s/ *J. Cary Gray*_____
   J. Cary Gray
   Texas Bar No.  08322300
   1300 Post Oak Blvd., Suite 2000
   Houston, Texas 77056
   Telephone:  (713) 986-7148
   Facsimile:  (713) 986-7100

ATTORNEYS FOR PLAINTIFFS
FRED E. RIZK, RIZK INTERESTS, Ltd.,
EDWARD G. RIZK, and SYLVIA R.
RIZK, as Trustee of the RRR TRUST

LAW OFFICE OF BRIAN P. CASEY

By: _____*/s/ Brian P. Casey*_____
   Brian P. Casey
   Texas Bar No.  00793476
   6836 Bee Caves, Suite 272
   Austin, Texas 78746
   Telephone:  (512) 617-6409
   Facsimile:  (888) 530-9616

ATTORNEYS FOR PLAINTIFFS
KENNETH A. BARFIELD, and
AUSTIN PROPERTIES, L.L.C.